UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ALFRED LAFORD,

Defendant.

11 Cr. 1032-07 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This order resolves a *pro se* motion by defendant Alfred Laford for compassionate release from United States Penitentiary ("USP") Hazelton, pursuant to 18 U.S.C. § 3582(c). For the reasons that follow, the Court denies the motion.

I. **Background**

On August 12, 2020, the Court denied an initial motion from Laford for compassionate release. *See* Dkt. 2510 ("CR Decision"). On March 17, 2023, the Court denied Laford's motion for reconsideration of that decision. *See* Dkt. 2677 ("CR Reh'g Decision"). This order incorporates by reference the discussions there of the case background and the bases for denying relief.

A. **Laford's Offense Conduct, Plea, and Sentencing**

In brief, Laford was a central member of the Bronx Trinitarios Gang, a violent gang that murdered more than a dozen people, engaged in countless other acts of violence that terrorized portions of the northwest Bronx, where it also operated an open-air narcotics bazaar. CR Decision at 1. As a member of the Trinitarios, Laford participated in a litany of violent acts. *Id.* These included the stabbing of a rival gang member; a car-to-car shooting on the Major Deegan

Expressway in the Bronx; and the possession of a firearm during the attempted murder, and serious wounding, of another rival gang member. *Id.*

On April 25, 2013, Laford pled guilty to two counts: (1) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); and (2) possession of a firearm that was discharged during and in relation to violent crimes in aid of racketeering, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(c)(1)(C)(i) and 2. *Id.* On January 9, 2014, the Court sentenced Laford to a term of 207 months imprisonment, to be followed by three years' supervised release. *Id.* at 2.

### B. Laford's Earlier Motion for Compassionate Release

On July 24, 2020, Laford moved for early release, in light of the COVID-19 pandemic. *See* Dkt. 2496. The Court denied that motion for two reasons, even assuming Laford's claim that his asthma put him at high risk from COVID-19 infection.

First, Laford was a danger to the community, a factor which overwhelmingly disfavored his early release. *See* CR Decision at 5–7. Reviewing its assessment at sentencing, the Court noted that "Laford's actions in support of the Trinitarios were violent, vengeful, and extremely dangerous," leading the Court, at sentencing, to describe Laford's offense conduct as "the most persistently violent, the most deeply antisocial, the most reckless, the wildest, and the most damaging to society" of the defendants it had—as of Laford's sentencing—sentenced in the case. *Id.* at 5 (citations omitted). The Court noted, too, that Laford had been undeterred by his prior brushes with the law and that his violence in connection with the Trinitarios had not been a "one-time occurrence or some sort of aberration in an otherwise law-abiding life." *Id.* (citations omitted). The Court thus had found at sentencing that Laford, "if released back into society, [would] take liberties again with people's lives." *Id.* (citations omitted). "Laford's history of senseless and reckless violence," the Court held, alone disposed of his compassionate release

2

application, "as this history leaves the Court gravely concerned about the risk he would pose to society if at liberty." *Id.*

Second, the 18 U.S.C. § 3553(a) factors, viewed together, strongly disfavored early release. Indeed, the Court stated: "[T]he question is not close." *Id.* at 6. The Court again drew upon its detailed assessment of these factors at sentencing and reiterated its assessment there. The § 3553(a) factor of just punishment "powerfully justified the sentence imposed," the Court stated, given "Laford's participation in numerous acts of senseless and retributive violence in support of a gang." *Id.* The interests in deterrence and public protection also favored the sentence imposed. *Id.* at 6–7. Ultimately, the Court found, "the risk that COVID-19 presents to inmates does not offset the factors pointing towards the sentence imposed." *Id.* at 7.

The Court's March 17, 2023 denial of Laford's motion for reconsideration incorporated that assessment by reference. CR Reh'g Decision at 1. That motion, the Court noted, "does not come to grips with, let alone refute, the Court's assessment" in denying Laford's initial motion. *Id.*

### C. Laford's Current Motion

On May 3, 2024, Laford, *pro se*, filed a second motion for compassionate release, pursuant to 18 U.S.C. § 3582(c). Dkt. 2712. He argued that his release is necessary to provide care for his ailing mother, age 54, and that he has rehabilitated, by completing programs within prison, by maintaining employment in prison, and by not incurring disciplinary infractions during the past six years. *Id.* at 1–2, 4–8.

On May 22, 2024, the Government filed a letter opposing Laford's motion, on three independent grounds. Dkt. 2720. It argued that Laford had not exhausted his administrative remedies, as required, *id.* at 5; that he had not demonstrated extraordinary and compelling

3

circumstances justifying release, and remained a danger to the community, *id.* at 5–8; and that, regardless, the § 3553(a) factors require denial of compassionate release, *id.* at 8.

On June 18, 2024, Laford filed a *pro se* "motion to amend." Dkt. 2729. As to administrative exhaustion, he stated that, on June 4, 2024, he had given a motion for compassionate release to the warden at USP Hazelton. *Id.* at 1. As to his mother's need for care, with respect to which the Government had argued that Laford had not shown he was the only potential caregiver, he set out reasons why his siblings and grandparents were, ostensibly, incapable of caring for her. *Id.* at 2–3.

On June 20, 2024, the Court issued an order directing the Government to notify it when either the warden had acted upon Laford's motion for release or 30 days had passed from the transmittal of that motion to the warden. Dkt. 2730. On June 27, 2024, the Government filed a letter reporting that the warden, on June 24, 2024, had denied Laford's motion, and attaching a copy of the denial. Dkt. 2731 & Exh. A.

On July 23, 2024, Laford filed a handwritten letter attaching a new certificate he had earned in prison and an updated list of his courses of study. Dkt. 2743.

## II. Discussion

### A. Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United*

4

*States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *see also, e.g., United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *See United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases, *id. See also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons

5

that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* U.S.S.G. § 1B1.13(b)(1). In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id.* § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (Nov. 1, 2023).

- *Age of the defendant.* Coupled with a deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *See id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a

6

finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above, such may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up).

- *Unusually long sentence plus changes in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### B. Application to Laford's Application

The Court assumes *arguendo* two premises underlying Laford's compassionate release motion: that (1) his mother is incapacitated and (2) other family members are ill-equipped to serve as her caregiver whereas Laford, if released, would be. For avoidance of doubt, the Court is not affirmatively crediting these showings. The Government has made substantial counter-arguments, including that these showings are conclusory, and that Laford's claim that his mother is unable to care for herself is undermined by statements from her providers. *See* Dkt. 2720 at 6. However, for two independent reasons, even assuming Laford had reliably established these points, the Court would still deny his motion for compassionate release. Each tracks a basis the

Court gave in 2020 in emphatically denying Laford's initial § 3582(c) motion, notwithstanding his claim at the time that remaining in prison would expose him to grave risk from COVID-19.

*First*, Laford remains a danger to the community. That follows from his alarming offense conduct, which the Court recounted at length at sentencing, using four acts of violence as illustrations. *See* Dkt. 981 ("Sent. Tr.") at 31–35. In October 2005, Laford got into an altercation with a member of the Bloods, a rival gang. He alerted other Trinitarios, and set off with a fellow gang member and a handgun to get revenge, intending to find and shoot at Bloods members. And he did: the two found a person they believed to be a member of the Bloods, and Laford's coconspirator fired multiple times at that person, seriously wounding him. *See id.* at 31. In 2009 or 2010, after getting angry at a nearby driver, Laford fired multiple shots from a van at a fast-moving car on the Major Deegan Expressway, showing "a total disrespect for human life." *See id.* 32–35 (noting that the van ran off the highway and onto the median and assuming that "miraculously no one was hurt"). In or about August 2009, Laford started a fight with rivals at the Dominican Day Parade, and stabbed a member of a rival gang initiating a violent feud between the two groups that led to a murder. *Id.* at 33–34. And in or about October 2011—two months before Laford was arrested on the Indictment that named the first wave of Trinitarios defendants—he joined a gang member who had decided to commit a murder. They retrieved guns, and Laford served as a lookout while two other gang members fired gunshots through their target's door. *Id.* at 34. *See generally* Dkt. 2720 at 1–2. Laford's behavior, in sum, demonstrated "a willingness to wound and potentially kill other human beings, whether to advance the interests of the gang, to advance [his] own interests, or perhaps [he] regarded this as some sort of sport." *See* Sent Tr. at 35.

8

Laford's track record of vicious and vengeful violence continues to preclude granting an application for his early release. The Court commends Laford on his clean disciplinary record in recent years and on the coursework and other productive steps he has taken in prison. These stand to further his rehabilitation, once released. But they cannot erase his offense conduct or eliminate the high concern based on that conduct that, if at liberty again, he would be tempted to return to his historic antisocial behavior patterns. Under these circumstances, his release is incompatible with the Sentencing Commission's guidance with respect to compassionate release. *See* U.S.S.G. § 1B1.13(a)(2) (to obtain release, a defendant must not be a danger to the community); *see, e.g.*, *United States v. Lopez*, No. 11 Cr. 1032 (PAE), 2020 WL 4450941, at *2–3 (S.D.N.Y. Aug. 3, 2020) (defendant's "history of senseless and retributive violence" "carrie[d] the day as to the Court's assessment of the risk he would pose to society if at liberty"); *United States v. Hope*, 464 F. Supp. 3d 646, 650 (S.D.N.Y. 2020) (interest in public safety weighed heavily against early release where defendant's conduct had been "violent, severe, and senseless"); *United States v. Jordan*, No. 18 Cr. 834 (PAE), 2020 WL 3839629, at *4 (S.D.N.Y. July 8, 2020) (similar); *United States v. Butler*, No. 19 Cr. 834 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (similar).

Second, the § 3553(a) factors, considered in combination, continue to favor the sentence imposed, of 207 months imprisonment. At sentencing, the Court painstakingly applied these factors to Laford. *See* Sent. Tr. at 29–48. It explained why these factors required the sentence imposed and made any lesser sentence unsustainable. *See id.* at 34–40. The Court particularly focused on the interest in just punishment and in promotion of respect for the law given the intentionality, nature, and duration of Laford's gang violence. *See id.* at 30, 34–37. The Court also noted the interest in public protection served by incapacitating him, given his record of

9

violence. *See id.* at 38–39. These § 3553(a) factors continue to weigh as heavily as at the time of sentencing and continue to demand the sentence imposed. A shorter sentence would not respect the seriousness of Laford's crimes, adequately promote respect for the law, or protect the public. *See* 18 U.S.C. § 3582(c)(1)(A) (release permissible only if compatible with § 3553(a) factors; *see, e.g., Butler*, 2022 WL 17968627, at *3 (the "combined force" of § 3553(a) factors disfavored early release); *United States v. Wright*, No. 15 Cr. 445-3 (PAE), 2022 WL 134870, at *5 (S.D.N.Y. Jan. 13, 2022) (same); *United States v. Cueto*, No. 11 Cr. 1032-80 (PAE), 2021 WL 621188, at *5 (S.D.N.Y. Feb. 17, 2021).

## CONCLUSION

For the reasons stated, the Court denies Laford's latest motion for compassionate release. The Clerk of Court is respectfully directed to terminate the motions pending at Docket 2712 and 2729.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: August 12, 2024
    New York, New York